IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| ELECTROWEB MEDIA, INC. and JASON GILSTRAP, | ) ) ) ) | |
| v. | ) ) | CIVIL NO. 1:02-CV-133 Collier/Carter |
| MYCASHNOW.COM, INC., CAREY BROWN, CREDIT PAYMENT SERVICES, INC., NOGUSKA and JOHN DOE. | ) ) ) ) | |

REPORT AND RECOMMENDATION

I. Introduction

Mycashnow.com, Inc.,'s Motion to Set Aside the Default Judgment (Doc. 27) entered against it in this case is before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C.§ 636(b)(1)(B). Mycashnow.com, Inc. (Mycashnow) seeks to have the default judgment set aside pursuant to Fed. R. Civ. P. 55(c) and 60(b) on the ground that it was never properly served with the summons and complaint in this case; therefore, the Court never had personal jurisdiction over it, and, consequently, the judgment against it is void. Mycashnow also seeks dismissal of all claims against it. For the reasons stated herein, it is RECOMMENDED that Mycashnow's motion to set aside the default judgment be GRANTED and Mycashnow's motion to dismiss be DENIED.

II. Relevant Facts

Plaintiffs Electroweb Media, Inc. (Electroweb) and Jason Gilstrap filed a complaint on May 2, 2002, with this Court naming Mycashnow.com, Inc. (Mycashnow), Carey Brown, Credit Payment Services, Inc. (CPS), Noguska corporation, and an unknown corporation as defendants. At its bare bones, this action is a breach of contract case. The plaintiffs allege that defendant

Brown and Mycashnow entered into a contract with Electroweb in which Electroweb would provide software products to the defendants for an internet payday loan business. Plaintiffs further allege that the defendants breached this agreement in a number of ways including misappropriating the plaintiffs' software codes. No return of summons and complaint for any defendant was ever placed in the Court record. Nevertheless, on May 13, 2002, counsel entered an appearance for the defendants Carey Brown and CPS in the Court record (Doc. 4). Further on June 20, 2002, defendant Noguska filed its answer to the plaintiffs' complaint (Doc. 9). Subsequently, on July 22, 2002, the plaintiffs moved for the entry of default judgment against defendants Carey Brown, CPS, and Mycashnow. (Doc. 11). In support of this request, plaintiffs supplied the affidavit of their counsel, Curtis L. Bowe, stating that Carey Brown was served with process on or about June 20, 2002, CPS was served with process on or about June 20, 2002, and Mycashnow was served with process on or about June 26, 2002 (Doc. 14). Subsequently, on July 24, 2002, CPS and Carey Brown filed their answer and a counter-claim to the plaintiffs' complaint (Doc. 16). On August 23, 2002, default was entered against defendant Mycashnow. (Doc. 19). On April 14, 2003, the Court entered an order of voluntary dismissal (Doc. 23) dismissing without prejudice Carey Brown, CPS, and Noguska as defendants in this case.

United States Magistrate Judge John Y. Powers held an evidentiary hearing on May 13, 2003, to determine damages against Mycashnow. Following the hearing, Magistrate Judge Powers determined that the plaintiff had suffered damages in the amount of $1,680,000.00 as a result of Mycashnow's breach of its contract with Electroweb and Jason Gilstrap. Therefore, the Magistrate Judge recommended that Electroweb be awarded damages in the amount of $1,680,000.00 (Doc. 25). No objections were filed to the Report and Recommendation and

2

Case 1:02-cv-00133   Document 42   Filed 09/08/06   Page 2 of 13   PageID #: 2

pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the District Court accepted and adopted the magistrate judge's findings of fact, conclusions of law, and recommendations and ordered that the plaintiffs' motion for default judgment be granted and plaintiff Electroweb be awarded damages in the amount of $1,680,000.00 against Mycashnow (Doc. 26).

On January 30, 2006, Mycashnow filed its motion to set aside the default judgment and to dismiss the claims against it (Doc. 27). As grounds to set aside the default judgment, Mycashnow asserts it is incorporated in Grenada (See Exhibit 1 to Defendant's Motion) where it has a registered agent authorized to receive service of process. (See Exhibit 2 to Defendant's Motion). Mycashnow also asserts that its registered agent in Grenada never received service of process and refers to the affidavit of Geneva L. Ashby, Deputy Clerk in Charge of the United States District Court, Eastern District of Tennessee, Chattanooga Division, in which Ms. Ashby states that there is no return of service of process on Mycashnow in the Court record (Exhibit 4 to Defendant's Motion). In response to Mycashnow's motion, plaintiffs filed the affidavit of Curtis L. Bowe, III (Doc. 32). Mr. Bowe represented the plaintiffs in 2002 in this case. According to Mr. Bowe, he served the summons and complaint on Mycashnow "by mailing it to Mycashnow.com, Inc. at Carey Brown and Credit Payment Services, Inc.'s office located at 3700 Rossville Boulevard, Chattanooga, TN 37407." (Bowe Affidavit at ¶ at 4). Bowe further stated that he knows a copy was received by Mr. Brown because Brown's attorney subsequently discussed this service with him and expressed the opinion that the service was not proper because Carey Brown was not the registered agent for service of process for Mycashnow (*Id.*). Bowe also stated he served a copy of the summons and complaint "upon Mycashnow.com, Inc. by mailing it to Mycashnow.com's registered agent, Grenada Offshore Management, Ltd. at Grand Anse, P.O.

3

Box 1107, St. George's Grenada, West Indies. The registered agent acknowledged receipt on June 26, 2002" (*Id*. at ¶ 5). The affidavit does not say how the registered agent acknowledged receipt or whether he mailed the summons and complaint by certified or registered mail requiring evidence of receipt.

The plaintiffs also presented evidence in the form of defendant Carey Brown's deposition taken on February 15, 2005, in support of plaintiffs' argument that Carey Brown and CPS are alter-egos of Mycashnow. In his deposition, Mr. Brown testified to the following: Prior to the formation of Mycashnow, Mr. Brown had faced litigation in connection with his "brick and mortar cash advance or payday loan business (Brown Dep. at 13-14). As he anticipated expanding into an internet based payday loan business, he searched the internet for an attorney to provide lawsuit protection and tax reduction for his new business (*Id*. at 13). He found a Canadian attorney and followed that attorney's advice in setting out Mycashnow as a Grenada corporation and CPS as a Nevada corporation (*Id*. at 7, 9, 11, 25, 26, 63-65).

Mycashnow did not have any employees or assets (*Id*. at 10-11). It never had a bank account (*Id*. at 11). It had nothing in Grenada other than a registered agent (*Id*. at 11-13). When asked how someone could communicate with Mycashnow if they wanted to talk to a live person, Mr. Brown testified that there "isn't anybody to talk to." (*Id*. at 80). Similarly, if the person wanted to send a letter to the company in Grenada, there is "no specific person" to whom the letter could be addressed (*Id*. at 20). One would simply send the letter to Mycashnow.

Mr. Brown admitted that Mycashnow was established for his personal benefit (*Id*. at 9). He also stated he is the one who makes business decisions for Mycashnow if there are decisions to be made (*Id*. at 43). He identified himself as "the person who most controls the shots or the

4

decisions for Mycashnow." (*Id*. at 58-59). He had also previously signed documentation as president of the company although he stated in his deposition that this was a mistake and that he should not have done that because he is not an officer of Mycashnow (*Id*. at 14-15). Mycashnow has no representatives, aside from the registered agent, or business activities in Grenada (*Id*. at 12-13). According to Brown, Mycashnow had a contract with CPS to handle the payday loans (*Id*. at 9). Under the contract with CPS, "Credit Payment Services did everything." (*Id*. at 9-10). Yet Mycashnow did not pay CPS or vice versa (*Id*. at 10, 55). CPS provided all marketing and processing involved with approving or denying a loan as well as bookkeeping for Mycashnow (*Id*. at 10). In response to a question about what Mycashnow is set up to do, Mr. Brown testified that "I think it's basically just a shell corporation." (*Id*. at 9). When asked "a shell corporation for what?" Mr. Brown stated, "I don't know." (*Id*. at 8). He later admitted that his objective was "lawsuit protection and tax reduction." (*Id*. at 13-14). Mr. Brown paid for Mycashnow to be set up in Grenada (*Id*. at 9). While he admitted it was set up for his benefit, Mr. Brown dryly observed that it may also have benefitted his Canadian attorney (*Id*. at 8). He could not think of anyone else for whom the company was established (*Id*. at 9). Mr. Brown denied knowing who Mycashnow's officers were and stated that once, when he asked his Canadian attorney to explain who the officers were, Mr. Brown became very confused with the explanation (*Id*. at 8-9). When asked where Mycashnow's business records were kept, Mr. Brown responded, "well, there aren't any business records, I don't think." (*Id*. at 36). He further testified that Mycashnow had never filed any tax returns and there have never been any financial records in existence for the company (*Id*. at 37-38). He further testified that Mycashnow had a legal office in Grenada which meant simply "an address where mail could be mailed to." (*Id*. at 11). He did not know if this address

was a post office box, a house, an office building, or something else (*Id*. at 11). Mr. Brown admitted that CPS operates as an internet cash advance business (*Id*. at 24). CPS does have actual employees in physical offices in Chattanooga and Mr. Brown is the vice president of CPS, but he claimed not to know who the president is (*Id*. at 24-25). In fact, Mr. Brown did not know who any of the other CPS officers were and explained that the Canadian attorney would know. He did not know if there had ever been a meeting of officers (*Id*. at 25).

Carey Brown could not identify whether the Mycashnow website was Mycashnow's website or CPS's website (*Id*. at 41). The actual website address is mycashnow.com. Similarly, if a customer calls into Mr. Brown's internet based cash advance business, Brown does not know if the customer is talking to a representative of Mycashnow or CPS (*Id*. at 55). He did not know if the customer signs a contact with Mycashnow or CPS or if, during the customer transaction, CPS or Mycashnow charges the fee (*Id*. at 66-67, 74). Yet, it is Mr. Brown that determines the amount of the fee (*Id*. at 74). Mr. Brown testified that Mycashnow was "just set up to provide a corporation shell to further protect internet based cash advance business." (*Id*. at 71).

A hearing on Mycashnow's Motion to Set Aside Default Judgment was held before the undersigned on August 29, 2006 in which the parties were invited to present evidence relating to the motion. While the parties declined to present evidence, counsel for the plaintiffs candidly conceded plaintiffs lack evidence to show Mycashnow's registered agent in Grenada received proper service of the summons and complaint in this case as they had no evidence to show that Mycashnow received service through certified or registered mail or though other means authorized by Fed. R. Civ. P. 4 on foreign corporations. Nevertheless, counsel for the plaintiffs argue that Mycashnow was not deprived of due process by lack of proper service because

6

Mycashnow shares an alter-ego status with Carey Brown and CPS who voluntarily submitted to the jurisdiction of the Court.

III. Analysis

*A.  Mycashnow's Motion to Set Aside the Default Judgment*

Pursuant to Fed. R. Civ. P. 55(c), Fed. R. Civ. P. 60(b)(4)and Fed. R. Civ. P. 60(b)(6), Mycashnow seeks to set aside the default judgment entered against it.  Rule 55(c) provides that a default judgment may be set aside in accordance with Rule 60(b).  Rule 60(b)(4) and (6) provide in relevant part: "On motion and upon such terms as are just, the court may relieve a party ... from a final judgment ..for the following reasons: ....(4) the judgment is void; ... (6) any other reason justifying relief from the operation of the judgment.  The motion shall be made within a reasonable time..."

A  judgment is void under 60(b)(4) "'if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.'" *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 108 (6th Cir. 1995) (quoting *In re Edwards*, 962 F.2d 641, 644 (7th Cir. 1992); *accord Jalepeno Property Management, LLC v. Dukas*, 265 F.3d 506, 516 (6th Cir. 2001).  Failure to properly serve a defendant with process renders a court lacking personal jurisdiction over the defendant.  *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.")*; Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1968) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process"); *O.J. Distributing, Inc. v. Hornell*

*Brewing Co.*, 340 F.3d 345, 352 (6th Cir. 2003) ("Due process requires proper service of process for a court to have jurisdiction to adjudicate the rights of the parties.") A judgment against a defendant over whom the court has no personal jurisdiction is void. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1081 (6th Cir.1990) ("It is elemental that a judgment rendered by a court lacking personal jurisdiction over the defendant is void as to that defendant.") Under such circumstances, a court has no choice but to set aside the judgment under Rule 60(b)(4):

> Under Rule 60(b)(4) a deferential standard of review is not appropriate because "[i]f the underlying judgment is void, it is a *per se* abuse of discretion for a district court to deny a movant's motion to vacate the judgment under Rule 60(b)(4)." *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 108 (6th Cir.1995) (quoting *United States v. Indoor Cultivation Equip. from High Tech Indoor Garden Supply,* 55 F.3d 1311, 1317 (7th Cir.1995)). *See also* 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2862 (2d ed. 1995) ("There is no question of discretion on the part of the court when a motion is under Rule 60(b)(4).").

*Jalapeno Property Management, LLC,* 265 F.3d at 515; *see also O.J. Distributing, Inc.*, 340 F.3d at 353 ("Therefore, if service of process was not proper, the court must set aside an entry of default.") Additionally, the directive that motions for relief from a final judgment under Rule 60(b) must be filed "within a reasonable time" does not apply to motions made under Rule 60(b)(4) to set aside void judgments:

> [T]here is no time limit on an attack on a judgment as void. The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a "reasonable time," which seems literally to apply to motions under Rule 60(b)(4), cannot be enforced with regard to this class of motion.

11 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL RULES OF PRACTICE AND PROCEDURE § 2862 (2d ed. 2006) (internal footnote omitted); *see also* 12 MOORE'S FEDERAL PRACTICE § 60.65 (Matthew Bender 3d ed. 2005) ("there is and can be no

time limit on judicial relief from a judgment that is, in fact, already a nullity and always subject to direct and collateral attack. Anytime is a 'reasonable time' to set aside a void judgment.") (internal citation omitted).

Mycashnow argues that because it was never properly served with process, the Court therefore lacks personal jurisdiction over Mycashnow and the judgment against it is void and should be vacated under Rule 60(b)(4). In their papers filed in response to Mycashnow's motion to set aside the default, plaintiffs originally argued that service had been properly effected on Mycashnow as required under Rule 4 because the plaintiff's previous counsel, attorney Curtis Bowe, had mailed the summons and complaint to Mycashnow's registered agent in Grenada. Mycashnow responded that the "mailing" was ineffective to constitute proper service under Rule 4(h) & (f)(2)(C)(ii) because there is no evidence that the mailing required a signed receipt.[1]

---

[1] There is no dispute that Mycashnow was incorporated in Grenada and has a registered agent designated to receive service of process in Grenada. Rule 4(h) provides in relevant part:

> **(h) Service Upon Corporations and Associations.** Unless otherwise provided by federal law, service upon a domestic or foreign corporation ... shall be effected:
>
> \* \* \*
>
> **(2)** in a place not within any judicial district of the United States in any manner prescribed for individuals by subdivision (f) except personal delivery as provided in paragraph (2)(C)(i) thereof.

Rule 4(f) provides:

> **(f) Service Upon Individuals in a Foreign Country.** Unless otherwise provided by federal law, service upon an individual from whom a waiver has not been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:
>
> **(1)** by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents; or
>
> **(2)** if there is no internationally agreed means of service or the applicable

9

At the August 29, 2006 hearing, plaintiffs conceded evidence is lacking to establish that the registered agent of Mycashnow in Grenada was properly served with the summons and complaint according to Fed. R. Civ. P. 4. The plaintiffs further represented to the Court that they intend to rely upon their alter-ego argument to establish that in personam jurisdiction over Carey Brown and CPS gives this Court in personam jurisdiction over Mycashnow which, in turn, means the default judgment against Mycashnow is not void.

Under operation of the alter-ego theory advanced by the plaintiffs, "[w]here one corporation so controls another corporation that, as a practical matter, the two entities function as

> international agreement allows other means of service, provided that service is reasonably calculated to give notice:
>
> **(A)** in the manner prescribed by the law of the foreign country for service in that country in an action in any of its courts of general jurisdiction; or
>
> **(B)** as directed by the foreign authority in response to a letter rogatory or letter of request; or
>
> **(C)** unless prohibited by the law of the foreign country, by
>
> **(i)** delivery to the individual personally of a copy of the summons and the complaint; or
>
> **(ii)** any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the party to be served; or
>
> **(3)** by other means not prohibited by international agreement as may be directed by the court.

The only method of service which plaintiffs have argued was actually used to serve Mycashnow's registered agent in Grenada is that set forth by Rule 4(f)(2)(C)(ii) which requires a mailing addressed and dispatched by the clerk of the court with a signed receipt. As previously indicated, plaintiffs conceded at the hearing they had no evidence to show these requirements had been met.

10

Case 1:02-cv-00133  Document 42  Filed 09/08/06  Page 10 of 13  PageID #: 10

one, service on one corporation is effective as to both." *Bally Export Corp. v. Balicar, Ltd.,* 804 F.2d 398, 405 (7th Cir. 1986) (citing *I.A.M. National Pension Fund v. Wakefield Industries, Inc.,* 699 F.2d 1254, 1259 (D.C.Cir.1983)). It is unnecessary for the undersigned to determine whether Mycashnow, Carey Brown and CPS are alter-egos of one another because even if the undersigned were to find they are alter-egos, the undersigned would still recommend that the default judgment be set aside.

The alter-ego doctrine is equitable in nature allowing the corporate veil to be pierced "to achieve justice, equity, to remedy fraud or wrong doing or to impose a just liability." WILLIAM MEADE FLETCHER, FLETCHER ENCYCLPEDIA OF THE LAW OF PRIVATE CORPORATIONS, §§ 41.20 & 41.25 (West Group 1999). To pierce the corporate veil, absent a showing of fraud, "the plaintiff must show that an inequitable result, involving fundamental unfairness, will result from a failure to disregard the corporate form." *Id.* at § 41.25.

Under Fed. R. Civ. P. 41, once a defendant has served an answer to the complaint, the plaintiff may not dismiss *without prejudice* the action against the defendant unless the defendant consents or the court so orders. Fed. R. Civ. P. 41. Defendants Carey Brown and CPS consented on April 13, 2003, to the dismissal of all claims against them without prejudice. (Doc. 23). The plaintiffs subsequently re-filed their claims against Brown and CPS in state court where they are currently pending. Had Brown and CPS known that plaintiffs would now argue Mycashnow received effective service of the summons and complaint on the theory that Mycashnow, Brown, and CPS are alter-egos, it is doubtful Brown and CPS would have consented to the dismissal without prejudice. In any event, where the *only* mechanism for concluding that Mycashnow has been properly brought under the jurisdiction of this Court is by

finding that Mycashnow, Carey Brown, and CPS are one and the same entities for purposes of liability in this action and where the plaintiffs voluntarily dismissed without prejudice Carey Brown and CPS, then when the plaintiffs dismissed their claims against Brown and CPS, they eliminated this Court's basis for personal jurisdiction over Mycashnow. In simple terms, "what's good for the goose is good for the gander." To find otherwise would constitute misuse of the equitable doctrine of alter-ego.

By finding that the alter-ego doctrine does not serve in this case to obviate the need to properly serve Mycashnow with the summons and complaint as required under Rule 4, I also find that the Court lacked in personam jurisdiction to enter the default judgment against Mycashnow, that the default judgment is void, and that it must be set aside pursuant to Rule 60(b)(4).

### B. *Mycashnow's Motion to Dismiss*

Mycashnow also moves the Court to dismiss this action against it. While Mycashnow does not specify the basis for this part of its motion, the undersigned Magistrate Judge surmises it is for insufficiency of service of process pursuant to Fed. R. Civ. P. 12(b)(5). Generally, the plaintiff is responsible for serving the defendant with a summons and complaint within 120 days as provided by Fed. R. Civ. P. 4(m). Rule 4(c)(1). If effective service is not made within the prescribed period, "the court, upon motion or on its own initiative, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified period of time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. *This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).*" Rule 4(m) (emphasis added). This last sentence indicates the 120-day limitation period does not apply in the instant case because the defendant is

12

located in Grenada. *Nylok Corp. v. Fastener World, Inc.*, 396 F.3d 805, 807 (7th Cir. 2005) ("The explicit language of this rule [4(m)] makes it very clear that the 120-day limit is inapplicable in cases involving service in a foreign country. This rule seems to recognize that the timeliness of foreign service is often out of the plaintiff's control.") However, at least one authority has concluded that absent an attempt to effect service on a foreign corporation within 120 days, the exemption from the 120-day rule does not apply. 1 MOORE'S FEDERAL PRACTICE § 4.52[3] (Matthew Binder 3d ed. 2000). Plaintiffs did attempt to serve Mycashnow's registered agent in Grenada with process within 120 days of filing the complaint. Therefore, the undersigned will recommend Mycashnow's motion to dismiss be denied and the plaintiffs be given an additional 120 days from entry of the Court's order to properly serve Mycashnow.

## IV. Conclusion

For the reasons stated herein, it is RECOMMENDED Mycashnow's motion to set aside the default judgment entered against it be GRANTED. It is further RECOMMENDED Mycashnow's motion to dismiss be DENIED and the plaintiffs be given an additional 120 days from entry of the Court's order to properly serve Mycashnow.

    s/William B. Mitchell Carter
WILLIAM B. MITCHELL CARTER
UNITED STATES MAGISTRATE JUDGE